## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: Osvaldo Amaro | ) | Bankruptcy No.  20-80051 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | Judge Lynch |
| | ) | |

## MEMORANDUM OPINION

The question before the court is whether the United States Trustee ("UST") may proceed on his motions to dismiss this chapter 7 case pursuant to 11 U.S.C. § 707(b).  The Debtor initially filed his petition under chapter 13 on January 13, 2020. He filed a proposed plan of reorganization, but before the court conducted a confirmation hearing, Mr. Amaro converted his case to chapter 7 by notice filed on February 28, 2020.  The UST now seeks to dismiss the converted case through two motions under section 707(b).  The first motion relies upon the so-called "means test" as applied in section 707(b)(2) to argue for the presumption of abuse. (ECF No. 70, the "(b)(2) Motion.")  The second invokes section 707(b)(3) to request a determination of bad faith or abuse. (ECF No. 80, the "(b)(3) Motion.")

The Debtor objects to the UST's motions and requests the dismissal of the (b)(2) Motion.  He argues, as a preliminary issue of law, that section 707(b)(2) does not apply to cases commenced under chapter 13 and that the (b)(3) Motion should be stayed

until this threshold issue is resolved.[1]  The UST concedes a split in authority, but he argues that the better-reasoned approach finds that section 707(b) applies to converted cases.  He also notes that the divided authority relates to language in subsection (b)(1) and, therefore, affects both motions.

For the reasons discussed below, the court concludes that a case originally filed under chapter 13 and subsequently converted to chapter 7 is subject to section 707(b) of the Bankruptcy Code.

## PROCEDURAL BACKGROUND

Arguing that the ruling on the legal issue could either avoid or limit evidentiary and other fact-related issues, the Debtor requested a ruling on the threshold question during the hearing on July 29, 2020.  The court takes the Debtor's oral request for a ruling as akin to a motion to deny the motions for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), which the court can make applicable under Fed. R. Bankr. P. 9014(c) and 7012.  For purposes of this ruling, therefore, the court accepts as true the factual allegations stated in the UST's motions, drawing reasonable inferences in his favor, without making findings of fact at this point. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

Section 707(b) of the Bankruptcy Code provides that after "notice and a hearing, the court, on its own motion or on a motion by the United States trustee,

---

[1] *See Oz's Response & Rebuttal Argument to USTO's [sic] 11 USC 707 (b)(2) Motion to Dismiss* (ECF No. 71, docketed as "*Notice of Objection*"); *Oz's Notice of Objection to USTO's [sic] 11 USC 707 (b)(3)* (ECF No. 81).

trustee . . . or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Subsections (b)(2) and (b)(3) set forth the standards for the court's determination of whether relief would be an "abuse" of the provisions of chapter 7. Subsection (b)(2) sets forth a mechanical "means test" based on the debtor's pre-petition income and expenses. If the debtor fails the means test then the granting of relief must be presumed abusive which presumption may be rebutted only upon a showing of "special circumstances." *Id.* § 707(b)(2)(B). However, if the means test "does not arise or is rebutted," the court may still dismiss a case for abuse and "shall consider – (A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . ." *Id.* § 707(b)(3).

At issue in this case is the phrase "a case filed by an individual debtor under this chapter whose debts are primarily consumer debts" in section 707(b)(1). Courts are split on the issue of whether section 707(b) applies to converted cases. A minority of bankruptcy courts interpret the words "filed . . . under this chapter" as limiting section 707(b) to cases that were originally filed as chapter 7 cases to the exclusion of cases later converted to chapter 7. *See In re Thoemke*, 2014 Bankr. LEXIS 451 (Bankr. M.D. Fla. Feb. 4, 2014); *In re Pate*, 2012 Bankr. LEXIS 5926 (Bankr. S.D. Tex. Dec. 28, 2012); *In re Layton*, 480 B.R. 392 (Bankr. M.D. Fla. 2012); *In re Chapman*, 431 B.R. 216 (Bankr. D. Minn. 2010); *McDow v. Dudley (In re Dudley)*, 405

B.R. 790 (Bankr. W.D. Va. 2009); *In re Guarin*, 2009 Bankr. LEXIS 3871 (Bankr. D. Mass. Dec. 3, 2009); *In re Ryder*, 2008 Bankr. LEXIS 2220 (Bankr. N.D. Cal. Aug. 18, 2008); *In re Miller*, 381 B.R. 736 (Bank. W.D. Ark. 2008); *In re Fox*, 370 B.R. 639 (Bankr. D.N.J. 2007).

The current trend and majority approach, including that of two courts of appeal, holds that the operative language at issue here provides that the section can only apply to voluntary cases of natural persons who are currently proceeding under chapter 7. Thus, they hold that section 707(b) may apply to a case converted to chapter 7. *See Pollitzer v. Gebhardt*, 860 F.3d 1334 (11th Cir. 2017); *Advanced Control Solutions, Inc. v. Justice*, 639 F.3d 838 (8th Cir. 2011); *Fokkena v. Chapman (In re Chapman)*, 447 B.R. 250 (8th Cir. B.A.P. 2011); *In re Kruse*, 545 B.R. 581 (Bankr. W.D. Wisc. 2016); *In re Croft*, 539 B.R. 122 (Bankr. W.D. Tex. 2015); *In re Burgher*, 539 B.R. 868 (Bankr. D. Colo. 2015); *In re Hayes*, 2015 Bankr. LEXIS 161 (Bankr. S.D. Tex. Jan. 16, 2015); *In re Pollitzer*, 2014 Bankr. LEXIS 4729 (Bankr. S.D. Fla. Nov. 12, 2014); *In re Summerville*, 515 B.R. 651 (Bankr. M.D. Fla. 2014); *In re Reece*, 498 B.R. 72 (Bankr. W.D. Va. 2013); *In re Davis*, 489 B.R. 478 (Bankr. S.D. Ga. 2013); *In re Lassiter*, 2011 Bankr. LEXIS 1927 (Bankr. E.D. Va. May 24, 2011); *In re St. Jean*, 515 B.R. 864 (Bankr. M.D. Fla. 2011); *In re Kraft*, 2010 Bankr. LEXIS 5121 (Bankr. D. Wy. Aug. 13, 2010); *In re Willis*, 408 B.R. 803 (Bankr. W.D. Mo. 2009); *Justice v. Advanced Control Solutions, Inc.*, 2008 U.S. Dist. LEXIS 81046 (W.D. Ark Sept. 22, 2008); *In re Kellett*, 379 B.R. 332 (Bankr. D. Oreg. 2007); *In re Kerr*, 2007 Bankr. LEXIS 2474 (Bankr. W.D. Wash. July 18, 2007); *In re Perfetto*,

361 B.R. 27 (Bankr. D. R.I. 2007). Additionally, the Supreme Court has suggested in dicta that section 707(b) applies to converted cases. In *Hamilton v. Lanning*, a chapter 13 case, the Court rejected an argument that the debtor "might have been able to obtain relief by filing under chapter 7 or by converting her chapter 13 petition to one under chapter 7," stating that the "availability of Chapter 7 to debtors like respondent who have above-median incomes is limited" because in the "respondent's case, a presumption of abuse would attach under § 707(b)(2)(A)(i)" based on her disposable income. 560 U.S. 505, 523 (2010).

I.    *The Language of Section 707(b)(1) Is Ambiguous.*

When a "statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (internal citation and quotation marks omitted). The minority view of section 707(b)(1) is that it clearly applies only to cases initially commenced under chapter 7 and not to cases converted to that chapter. The court disagrees. As discussed below, the court must conclude that the critical language in question provides that subsection (b) shall apply to any voluntary chapter 7 case so long as the debtor is an individual regardless of which chapter the petition was originally filed under. As the court found in *In re Lassiter,* "[b]oth of these readings of § 707(b)'s critical language are coherent, grammatically sound, and completely plausible. Thus, the Court cannot rely solely on the plain meaning of 11 U.S.C. § 707(b), as it does not have a singular meaning." *In re Lassiter*, 2011 Bankr. LEXIS 1927, at *8.

The phrase "a case filed by an individual debtor under this chapter whose debts are primarily consumer debts" literally read, admits of at least two plausible interpretations, one applying only to cases where the initial petition was filed under chapter 7 and the other as including cases where the debtor is currently proceeding under chapter 7 due to conversion of the case.  This arises from grammatical ambiguity as to what the phrase "under this chapter" relates to and from linguistic ambiguity as to whether to "file" a case "under" chapter 7 includes conversion to that chapter.

The Debtor, advocating for the minority approach, argues that the phrase "under this chapter" is an adverbial phrase modifying the passive verb "filed." Accordingly, the word "case" must mean a case "filed under this chapter."  This is a plausible interpretation.  But the phrase could also plausibly relate to and modify the term "debtor" or even the word "case," instead.  The phrases "debtor under chapter 7" and "case under chapter 7" could include cases converted to chapter 7 even if not originally filed under that chapter, for after conversion the case would become a "case under chapter 7" and the debtor a "debtor under chapter 7."  Indeed, of these three interpretations, there is a strong grammatical argument that the phrase modifies the word "debtor."  As noted by the court in *Justice v. Advanced Control Solutions, Inc.*, this interpretation better satisfies the doctrine of "last antecedent" that a "limiting clause or phrase ordinarily is to be read as modifying only the noun or phrase it immediately follows." 2008 U.S. Dist. LEXIS 81046, at *10 (citing *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 342-43 (2005)).  Applying this

doctrine, "the noun 'case' could be modified by the phrase 'filed by an individual debtor' that immediately follows it, and the noun 'debtor' could be modified by the phrase 'under this chapter' that immediately follows it." *In re Reece*, 498 B.R. 72, 79-80 (Bankr. W.D. Va. 2013).

Even if the court were to accept the minority view's grammatical argument that section 707(b)(1) applies to "a case filed . . . under" chapter 7, the phrase is still ambiguous as to what it means. Literally speaking, documents or papers are "filed," not cases. *See, e.g.,* 11 U.S.C. § 107(a) (A "paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."); Fed. R. Bankr. P. 5005(a)(1) ("Place of filing. The lists, schedules, statements, proofs of claim or interest, complaints, motions, applications, objections and other papers required to be filed by these rules . . . shall be filed with the clerk in the district where the case under the Code is pending."). The phrase could certainly include filing a bankruptcy petition which selects chapter 7, but it could also include filing a notice of conversion, which causes a non-chapter 7 case to become "a case under chapter 7."

Section 301 of the Bankruptcy Code states that a "voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C. § 301(a). For a voluntary case, the filing of the petition and commencement thereby

"constitutes an order for relief under such chapter." 11 U.S.C. § 301(b).[2]  Accordingly, to file a petition selecting a chapter is to "file a case" and to "file a case under" that chapter. But the fact that a "case" commences through filing a petition and such case commences "under the chapter" selected therein does not necessarily mean that the phrase "file a case under chapter 7" refers only to the filing of a petition selecting chapter 7.  A case initially filed under chapter 13 but later converted to chapter 7 has become a "case under chapter 7."  While the case commenced with the filing of the petition, it only commenced "under chapter 7" through the conversion. Commencement of the case "under chapter 7" may be accomplished through the filing of another document – a notice of conversion.  Where the debtor has not previously converted the case, a chapter 13 debtor may convert the case to chapter 7 "without court order when the debtor files a notice of conversion." Fed. R. Bankr. P. 1017(f)(3). The "filing date of the notice becomes the date of the conversion." *Id.*  The debtor's right to convert a chapter 13 case to chapter 7 is unconditional and unwaiveable. 11 U.S.C. § 1307(a).  Thus, while here the "case" began with the filing of the petition and the "case under chapter 13" was also commenced by the filing of the petition, the "case under chapter 7" could be seen as commenced with the filing of the notice of conversion.

Additionally, even if the filing of a notice of conversion is not seen independently as "filing a case under chapter 7," the initial filing combined with the

---

[2] In contrast, while an involuntary case is commenced by the filing of a petition by petitioning creditors, the order for relief is entered subsequently, only after the debtor has the opportunity to contest the petition. 11 U.S.C. § 303.

later conversion – both of which were through documents filed by the debtor – could arguably be seen as one act rather than two separate acts. For example, in analyzing the language of section 546(e) of the Bankruptcy Code – a safe-harbor provision protecting certain transfers from avoidance by a trustee – the Supreme Court held that the term "transfer" applied to the "overarching transfer" not to "any component part of that transfer." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 892-93 (2018). It did so based on "the specific context in which that language is used and the broader statutory structure." *Id.* The Court found that intermediate component transfers to financial institutions did not bring the transfer within the safe harbor of section 546(e) protecting from avoidance transfers made "by or to (or for the benefit of) a . . . financial institution." *Id.* (quoting 11 U.S.C. § 546(e). In a similar way, a debtor's filing of a petition under chapter 13 and subsequent filing of a notice of conversion to chapter 7 can be viewed based on the "overarching" acts of the debtor to commence a chapter 7 proceeding. Indeed, section 707(b)(1) does not specifically mention filing of a "petition." It arguably encompasses other "filings" by the debtor which open a chapter 7 proceeding, such as filing a notice of conversion. Given this ambiguity, a court must look beyond the words in isolation to construe the meaning of the provision.

Finally, some courts have held that when a bankruptcy case is converted from one chapter to another the debtor is "deemed to have 'filed under' the *converted to chapter*, as of the date the original petition was filed." *In re Lassiter*, 2011 Bankr. LEXIS 1927, at *13 (citing *In re Perfetto*, 361 B.R. 27, 30-31 (Bankr. D.R.I. 2007);

*Fokkena v. Chapman (In re Chapman)*, 447 B.R. 250, 2011 Bankr. LEXIS 748 (B.A.P. 8th Cir. Mar. 11, 2011); *McDow v. Sours (In re Sours)*, 350 B.R. 261 (Bankr. E.D. Va. 2006); *McDow v. Capers (In re Capers)*, 347 B.R. 169 (Bankr. D.S.C. 2006)). *But see McDow v. Dudley (In re Dudley)*, 405 B.R. 790, 796-97 (Bankr. W.D. Va. 2009). This theory is primarily based on language in section 348 that "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted" but with certain exceptions "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). While some courts within the minority approach emphasize section 348(a)'s statement that conversion "does not effect a change in the date of the filing of the petition" to mean it does not affect the initial "filing of the case," we are persuaded by the *Lassiter* decision and the cases cited therein which read that provision as limited to timing and not chapter. Instead emphasizing the language that conversion "constitutes an order for relief" under the new chapter, they interpret section 348 as meaning that the case is deemed to have been "filed under" the new chapter, and such filing date is deemed to be the original petition date. *In re Lassiter*, 2011 Bankr. LEXIS 1927, at *16-17.

II.    *Context Within the Bankruptcy Code Supports Application to Converted Cases.*

Part of the problem is that the phrase "case filed" in section 707(b) is inconsistent with the terminology used elsewhere in the Bankruptcy Code, and particularly prior to the amendment which added section 707(b). The 1978

Bankruptcy Code as originally enacted consistently used the terms "file a petition" and "commence a case," not "file a case," and those terms are still by far the primary terms used in the Code to describe the commencement of a case. *See, e.g., In re Chapman,* 431 B.R. 216, 218 (Bankr. D. Minn. 2010), *rev'd and remanded,* 447 B.R. 250 (B.A.P. 8th Cir. 2011) ("[I]n the direct sense of the nouns and verbs in the Code's general structural provisions, a bankruptcy 'case' is not 'filed,' in and of itself.  Rather, a bankruptcy case is 'commenced,' via the filing of a specific document, a discrete statement of an intention to invoke bankruptcy remedies that is called a 'petition.'"); 11 U.S.C. § 301(a) ("A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.")  In contrast, the phrase "file a case" first appeared in amendments to three sections in 1984, including section 707(b). PL 98-353 (HR 5174), July 10, 1984, 98 Stat 333.  Section 522(b) was amended to clarify that in "joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife," the spouses must both select either state or federal exemptions. *Id.*  Section 547(c) was also amended to provide a *de minimus* defense to preference actions against consumer debtors "if, in a case filed by an individual debtor whose debts are primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600." *Id.*  However, other than section 707(b),[3] the longer phrase "file a case under [a] chapter" did not appear in the Bankruptcy Code until later

---

[3] At least according to the minority view that "under this chapter" modifies "filed." *See* discussion *supra.*

amendments – most notably the 2005 amendments – and still only appears in a handful of provisions.[4]

In contrast, the Bankruptcy Code makes frequent reference to both "cases" and "debtors" "under" particular chapters and has done so since the original enactment of the 1978 Code. For example, as stated in section 103, "Chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13," "Subchapters I and II of chapter 7 . . . apply only in a case under such chapter," and "Chapter 13 . . . applies only in a case under such chapter." 11 U.S.C. § 103. Section 103 applies such chapters to cases based on the chapter they are currently proceeding under without regard to conversion from a different chapter. Similarly, section 109 states the criteria for who "may be a debtor under chapter 7," a "debtor under chapter 9," a "debtor under chapter 12" and a "debtor under chapter 13." 11 U.S.C. § 109. That section, too, applies based on the chapter a case converts to. *See, e.g., Marrama v. Citizens Bank*, 549 U.S. 365, 372 (2007) ("The words 'unless the debtor may be a debtor under such chapter' expressly conditioned Marrama's right to convert on his ability to qualify as a 'debtor' under Chapter 13." (citing 11 U.S.C. §§ 706(d), 109(e))).

Indeed, if section 707(b)(1) was intended to apply only to cases commenced under chapter 7, the legislature could have easily drafted the statute to make that clear. For example, it could have expressly stated the section is restricted to a "case commenced under chapter 7" or to a case in which an individual debtor "filed a petition under chapter 7." *See, e.g.,* 11 U.S.C. § 362(i) ("If a case commenced under

---

[4] See 11 U.S.C. §§ 101(51C); 342(f)(2); 362(c)(3); 362(c)(4); 366(c)(2); 707(b)(4)(A)(ii)(II); 707(c)(2), (3); 1202(a); 1326(a)(4); 1328(f).

chapter 7, 11, or 13 is dismissed . . . .”).  Of course, it simply could have stated that the section does not apply to converted cases.  Congress elsewhere “expressly excluded converted cases from the reach of other sections of the Code, but not from § 707(b).” *Pollitzer*, 860 F.3d at 1340 (referencing 11 U.S.C. §§ 1208(b), 1307(b)). *See also* 11 U.S.C. §§ 1112(b)(2), 706(a) (giving right to convert a chapter 7 case to chapter 11, 12, or 13 at any time “if the case has not been converted under section 1112, 1208, or 1307 of this title”).

The minority view often points to section 348 in support of their argument. *See, e.g., In re Fox*, 370 B.R. 639, 643-44 (Bankr. D.N.J. 2007).  That section, however, offers little to clarify the issue.  Section 348 describes certain effects of conversion from one chapter to another.  While the section clarifies that conversion “does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief,” 11 U.S.C. § 348(a), it does nothing to clarify whether a converted case can be considered to be a “case filed under” the new chapter.  Instead, section 348 primarily involves issues of timing of the “date of” the filing of the petition, commencement of the case and order for relief. 11 U.S.C. § 348(a). While section 348 provides that the date of the petition does not change and does not list section 707(b) among the provisions for which the conversion shall constitute the order for relief, section 707(b)(1) uses neither of those terms. *Cf., e.g.,* 11 U.S.C. §§ 541(a), 11 U.S.C. § 727(b).

Finally, a construction of “a case filed under [chapter 7]” to exclude cases converted to chapter 7 would have odd consequences for similar language used

elsewhere in the Bankruptcy Code.  For example, section 707(c)(2) gives victims of crimes of violence or drug trafficking crimes the right to request dismissal of "a voluntary case filed under this chapter" by a debtor convicted of such crime. 11 U.S.C. § 707(c)(2).  It seems incongruous that Congress would want to protect victims of such crimes only if the convicted debtor's case had not previously converted from another chapter.

While the Bankruptcy Rules cannot "abridge, enlarge, or modify any substantive right," 28 U.S.C. § 2075, Bankruptcy Rule 1019 also tends to demonstrate that the interpretation of section 707(b) as applying to converted cases is at least a plausible reading of the statute.  That Rule states that when a case is converted to a chapter 7 case a "new time period for filing a motion under § 707(b) . . . shall commence under" Rule 1017. Fed. R. Bankr. P. 1019(2).  Indeed, in *Pollitzer*, the Eleventh Circuit found it "persuasive that when Congress passed BAPCPA, it left unaffected Federal Rule of Bankruptcy Procedure 1019(2)(A), which sets a new time period for filing a motion under § 707(b) in a case that has been converted from Chapter 13 to Chapter 7." 860 F.3d at 1340.  As the court noted, "Congress, we must presume, was aware of Bankruptcy Rule 1019(2)(A) when it legislated, and the Rule would be unintelligible if § 707(b) did not apply to converted cases." *Id.*

III.    *The Historical Context of the Questioned Language Supports Majority View.*

The Debtor argues that the language in section 707(b)(1) demonstrates Congress' intent to exclude converted cases from the "means test" added by the 2005 amendments.  The language at issue, however, was actually added by amendment to

the Bankruptcy Code in 1984. The original section 707 under the 1978 Bankruptcy

had no subsections and provided that:

> The court may dismiss a case under this chapter only after notice
> and a hearing and only for cause, including—,
>> (1) unreasonable delay by the debtor that is prejudicial to
>> creditors; and
>> (2) nonpayment of any fees and charges required under chapter
>> 123 of title 28.[5]

PL 95–598 (HR 8200), PL 95–598, November 6, 1978, 92 Stat 2549. The 1984

amendments added as subsection (b):

> (b) After notice and a hearing, the court, on its own motion and not at
> the request or suggestion of any party in interest, may dismiss a case
> filed by an individual debtor under this chapter whose debts are
> primarily consumer debts if it finds that the granting of relief would be
> a substantial abuse of the provisions of this chapter. There shall be a
> presumption in favor of granting the relief requested by the debtor.

PL 98-353 (HR 5174), July 10, 1984, 98 Stat 333. Subsection (b) was modified in 1986

to provide standing for the UST and modified in 1998 to create a safe harbor for

certain charitable contributions. In 2005, Congress extensively modified the

subsection to expand standing to other parties in interest, remove the presumption

in favor of the debtor and add the presumption of abuse through the means test. But

the language at issue here has remained the same since 1984: "may dismiss a case

filed by an individual debtor under this chapter whose debts are primarily consumer

debts."

---

[5] This language remains largely unchanged in the current version of the statute as subsection (a). The only change is to add a third example of cause for dismissal: "(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee," which was added by amendment in 1986. 1986 PL 99–554 (HR 5316), PL 99–554, October 27, 1986, 100 Stat 3088.

The words "may dismiss a case" and "under this chapter" existed in the original version of the section. Subsection 707(a) more broadly applies to all "case[s] under this chapter." The amended subsection (b) is more limited, applying only to cases "filed by an individual debtor" and "whose debts are primarily consumer debts." In this context, it becomes clear that the phrase "filed by" relates to the nature of the debtor, not to the chapter. The minority view suggests that if "under this chapter" refers to the chapter the case is currently proceeding under, then it is redundant, since section 103(b) already makes the provisions of chapter 7 generally only apply to "a case under such chapter." 11 U.S.C. § 103(b). *See, e.g., In re Layton,* 480 B.R. 392, 395 (Bankr. M.D. Fla. 2012), *abrogated by Pollitzer v. Gebhardt*, 860 F.3d 1334 (11th Cir. 2017). But such "redundancy" pre-dated the addition of the word "filed," and continues to appear in section 707(a), as well as in the conversion and dismissal provisions in sections 1112, 1208 and 1307. In limiting the section to cases "filed by an individual debtor . . . whose debts are primarily consumer debts," the section is limited to (1) voluntary cases filed by a debtor, not involuntary cases, (2) cases involving individual debtors, not corporate debtors, and (3) debtors with primarily consumer, not business-related, debts. *See, e.g., In re Reece*, 498 B.R. 72, 80 (Bankr. W.D. Va. 2013) ("The statutory text, context, and scheme subject only voluntary cases of individual debtors to section 707(b), as distinguished from cases of non-individuals or involuntary cases."). This intent is supported by the subtitle of the section adding the provision in the 1984 amendments: "Consumer Credit Amendments." PL 98-353 (HR 5174), July 10, 1984, 98 Stat 333 (Title III, Subtitle A). *See also, e.g., Perlin v.*

*Hitachi Capital Am. Corp.*, 497 F.3d 364, 370 (3d Cir. 2007) (noting subsection 707(b) "was enacted as part of a package of consumer credit amendments in response to perceived abuses by consumer filers"). The amendment, intended to address voluntary cases by individual debtors with primarily consumer debts, is also consistent with its modification to section 547(c) to add a preference defense for "if, *in a case filed by an individual debtor whose debts are primarily consumer debts*, the aggregate value of all property [transferred] is less than $600." *Id.* (emphasis added).

Indeed, it appears that it was largely taken for granted that section 707(b) applied to converted cases for more than twenty years after the 1984 amendments. Prior to the 2005 amendments, it appears that no published opinion held to the contrary. Several cases, however, either applied section 707(b) to converted cases without discussion or stated or suggested in dicta that it would apply. For example, in *In re Smihula*, the court granted a UST's motion to dismiss a case converted from chapter 13 under section 707(b), ordering the case to be dismissed unless the debtor reconverted to chapter 13. 234 B.R. 240 (Bankr. D. R.I. 1999).[6] Similarly, in *In re Beharry*, the court *sua sponte* dismissed a case converted from chapter 13 to chapter 7 under section 707(b) as "a substantial abuse of the provisions of chapter 7." 264 B.R. 398 (Bankr. W.D. Pa. 2001). Paraphrasing section 707(b), the court concluded: "[t]wo prerequisites must be met before a case may be dismissed in accordance with § 707(b): (1) the debts of the debtor are 'primarily consumer' in nature; and (2) granting the

---

[6] The opinion addressed the issue whether the charitable contribution safe harbor applied to contributions commenced post-petition and assumed without discussing that section 707(b) applied.

debtor relief in the form of a discharge would be a 'substantial abuse' of the provisions of chapter 7 of the Bankruptcy Code." 264 B.R. at 402.  Finding that the debtor deliberately understated income and overstated expenses and was "not one of those truly needy debtors in need of a clear field for future effort," the court dismissed the case under section 707(b). 264 B.R. at 404.  The court concluded that "[b]ecause debtor already has signaled his unwillingness to proceed as a chapter 13 debtor, there is no point to issuing an order which would give debtor the option of converting to chapter 13 as an alternative to dismissing his case." *Id.*[7]

Congress added the language at issue to the Bankruptcy Code more than 20 years before the 2005 amendments added the means test. *See, e.g.,* 6 Collier on Bankruptcy P 707.LH (16th ed. 2020).  It had the opportunity to change the language present in section 707(b)(1) when making the extensive amendments to that section in 2005, but did not.  As stated by the court in *In re Davis*, "Given this caselaw and the apparent lack of controversy on the point, it follows that Congress did not perceive any need to amend the language at issue when Congress passed the BAPCPA amendments to § 707(b)." 489 B.R. 478, 483 (Bankr. S.D. Ga. 2013) (citing *Fla. Nat'l*

---

[7] In *In re Donovan*, the court denied a motion by a creditor to dismiss a converted case under section 707(b) but not on the merits. 2006 Bankr. LEXIS 3728 (Bankr. M.D. Fla. Nov. 8, 2006).  Instead, the court found that because the petition had been filed before the effective date of the 2005 amendments, the pre-2005 version of section 707(b) applied, under which creditors had no standing to seek dismissal. *See also In re Lepper*, 58 B.R. 896, 902 (Bankr. D. Md. 1986) ("[A]busive debtors . . . are now subject to the 1984 'watchdog' provision of § 707(b)."); *In re Fulton*, 211 B.R. 247 (Bankr. S.D. Ohio 1997) ("Obviously, if the debtor converts as is his right under 11 U.S.C. § 1307(a), the debtor must be eligible to file a Chapter 7 which would include an analysis under § 707(b)."); *Liberty Nat'l Bank & Trust Co. v. Burba (In re Burba)*, 1994 U.S. App. LEXIS 31290 (6th Cir. Nov. 10, 1994) ("[A] Chapter 7 case can be dismissed under § 707(b) if Chapter 7 relief would be a substantial abuse of the provisions of that chapter").

*Guard v. Fed. Labor Relations Auth.*, 699 F.2d 1082, 1087 (11th Cir. 1983)
("[C]ongress is deemed to know the executive and judicial gloss given to certain
language and thus adopts the existing interpretation unless it affirmatively acts to
change the meaning.")). *See also Cranberry Growers Coop. v. Layng,* 930 F.3d 844,
852 (7th Cir. 2019) ("Congress is presumed to be aware of an administrative or
judicial interpretation of a statute and to adopt that interpretation when it re-enacts
a statute without change." (citing *Lorillard v. Pons*, 434 U.S. 575, 580 (1978))).
"[P]re–BAPCPA bankruptcy practice is telling because 'we will not read the
Bankruptcy Code to erode past bankruptcy practice absent a clear indication that
Congress intended such a departure.'" *Hamilton*, 560 U.S. at 517; *Dewsnup v. Timm*,
502 U.S. 410, 419 (1992) ("[W]hen Congress amends the bankruptcy laws, it does not
write 'on a clean slate.'").

In view of the history of the language appearing in section 707(b)(1) and the
context in which it was added through amendment, the court finds persuasive the
majority approach that section 707(b) applies to cases currently pending under
chapter 7, whether or not the case originally commenced under that chapter.


IV.    <u>The Policy Behind Both the 1984 and the 2005 Amendments Favors
the Majority View.</u>

The Debtor raises the concern of those of the minority view that application of
the means test to converted cases will result in unfair or even absurd results. *See,
e.g., In re Fox,* 370 B.R. 639, 646 (Bankr. D.N.J. 2007).  First, they note that the
means test is primarily based on the debtor's average prepetition disposable income

during the six-month period preceding the petition. 11 U.S.C. §§ 101(10), 707(b)(2). Yet a case might be converted from chapter 13 to chapter 7 at any time during a case, meaning that the conversion could occur as many as 60 months after the petition date.  If the purpose of the means test is to sort out debtors with sufficient future income to make meaningful payments to creditors, then the test can become less and less useful for converted cases as time passes from the petition date.

Second, they point to both the 1984 amendments, adding section 707(b) to chapter 7 and the disposable income test to section 1325, and the 2005 amendments, adding the means test to section 707(b), and further changes to section 1325.  These amendments, they argue, reflect congressional desire to encourage debtors to choose to reorganize under chapter 13 rather than liquidate under chapter 7 and to ensure they devote all disposable income for three to five years to repayment of creditors. *See, e.g., In re Skvorecz,* 369 B.R. 638, 643 (Bankr. D. Colo. 2007) ("Historically, the intent of Congress behind 707(b) has been to require a debtor who has the ability to repay something to unsecured creditors from post-petition disposable income, to convert his case to Chapter 13 rather than simply receiving a Chapter 7 discharge."). Applying the means test to converted cases, however, potentially punishes debtors who make that choice but are unable to complete a plan through no fault of their own. Indeed, for debtors who file a petition under chapter 13 based on disposable income, propose a plan and start making payments but later lose their job, applying the means test to converted cases could result in denial of any form of relief.  For if debtors have no current income to complete a plan, but their pre-petition income causes them

to fail the means test, then they might find themselves barred from both chapter 7 and chapter 13. *See, e.g., In re Dudley*, 405 B.R. 790, 799 (Bankr. W.D. Va. 2009). *But c.f., e.g., In re Lybrook*, 951 F.2d 136, 137 (7th Cir. 1991) (noting that even if Congress "wanted to encourage repayment plans as an alternative to straight bankruptcy," a policy which "encourages conversions from Chapter 13 to Chapter 7" may result in "as many or more personal bankruptcies [ending] up in Chapter 7").

But, interpreting section 707(b) not to apply to converted cases can result in equally unfair or absurd results in the opposite direction.  If the majority approach ends up punishing some good-faith debtors, the minority approach can end up rewarding bad-faith debtors by creating an enormous loophole to the means test added by the 2005 amendments and to the earlier "substantial abuse"-based test in the 1984 amendments. *See, e.g., In re Kruse*, 545 B.R. 581, 588 (Bankr. W.D. Wis. 2016).  Section 1307(a) gives the debtor the right to "convert a case under [Chapter 13] to a case under chapter 7 . . . at any time." 11 U.S.C. § 1307.  Where the debtor has not previously converted the case, he or she can do so automatically by filing a notice of conversion without need for a court order. Fed. R. Bankr. P. 1017(f)(3). Under the minority approach, a debtor with significant income wishing to avoid the means test could simply file a chapter 13 case followed by a notice of conversion to chapter 7 shortly thereafter.

The Bankruptcy Code has better mechanisms to address the overinclusive nature of the means test than the underinclusive approach resulting from the minority view. *See, e.g., In re Davis,* 489 B.R. 478, 485 (Bankr. S.D. Ga. 2013) (noting

"there are alternatives such as dismissal . . . , voluntary conversion to chapter 11, rebutting of the presumption under § 707(b) and also the UST's discretion in bringing his motions in good faith"). Avoiding the type of outcome that the minority view would allow is precisely the sort of perceived abuse that both the 1984 amendment and 2005 amendment were intended to curtail. *See, e.g.,* Eugene R. Wedoff, *Means Testing in the New § 707(b),* 79 Am. Bankr. L.J. 231, 233 (2005) ("The potential for . . . easy access to discharge by individuals with ample income to pay debts led Congress, in 1984, to create a new ground for dismissal of Chapter 7 cases, codified as § 707(b).").

A debtor who converts to chapter 7 because a post-petition loss in income renders infeasible reorganization under chapter 13 is not without remedies under the majority view. *See, e.g., In re Burgher,* 539 B.R. 868, 878 (Bankr. D. Colo. 2015). The means test is not an absolute bar to relief under chapter 7. Failing the means test merely creates a presumption of abuse. 11 U.S.C. § 707(b)(2)(A)(i). While the debtor bears a difficult burden, the presumption is rebuttable. *See* 11 U.S.C. §707(b)(3)(B). Debtors who make a good-faith effort to propose and complete a chapter 13 plan but fall short due to loss of income or increase in necessary expenses before plan completion may demonstrate special circumstances to rebut the presumption.[8] After rebutting such presumption, the debtor, of course, would still need to demonstrate

---

[8] Additionally, chapter 13 already has mechanisms to address loss of income, including the power to modify a plan to reduce or extend the time for payments, 11 U.S.C. § 1329, or, where modification is not practicable, a "hardship discharge" prior to plan completion, 11 U.S.C. § 1328(b). Also, while the projected disposable income test for plan confirmation in section 1325(b) is tied to the means test, courts "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Hamilton*, 560 U.S. at 524.

that the petition was not filed in bad faith and based on the totality of the circumstances was not an abuse of chapter 7.  But good-faith debtors who made their best efforts to reorganize in chapter 13 before converting should be able to meet this standard while bad-faith debtors who first filed in chapter 13 in order to evade the means test would not.

In contrast, the minority approach offers only imperfect solutions to prevent debtors who would use conversion as a loophole to avoid the means test. *See, e.g.*, *Pollitzer*, 860 F.3d at 1339 (stating the court was "not convinced" of sufficiency of purported remedies to deal with bad-faith debtors such as court's equitable powers under 11 U.S.C. § 105(a)).  The Debtor suggests that section 707(b)(3)'s bad faith and totality of the circumstances tests, which apply "in a case in which the presumption" in subsection (b)(2) "does not arise or is rebutted," could close the loophole.  But that would require ignoring the language of the statute, indeed, the very basis for the minority view.  For subsection (b)(3) is clear that it does not provide an independent ground for dismissal.  Rather, it sets out a standard to be used in "considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(3).  It is the "filed . . . under" language which appears in section 707(b)(1), not in the means test under section 707(b)(2), that is the foundation of the minority approach.

Another possibility is that such cases could be dismissed under section 707(a) "for cause."  The Seventh Circuit has held that section 707(a)'s "cause" includes "conduct that, while not a violation of required procedures, avoids repayment of debt

without an adequate reason." *In re Schwartz*, 799 F.3d 760, 763 (7th Cir. 2015). But reliance on section 707(a) also presents difficulties. First the 1984 amendment's addition of section 707(b) was at least in part in response to conflicting case law on whether ability to repay debts was a factor that could be considered in deciding a motion to dismiss. *Pollitzer*, 860 F.3d at 1339 ("Congress passed § 707(b) precisely because the 'for cause' basis for dismissal under the original § 707 did not work as readily as Congress would have preferred."). The legislative history of the original 1978 statute explained that section 707 "does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy." Senate Report No. 95-989.

The consumer credit amendments in 1984 "were passed in response to an increasing number of Chapter 7 bankruptcies filed each year by non-needy debtors" and allowed "a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors." *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989). However, a broad equitable standard "reflects the tension between the fundamental policy concern of the Bankruptcy Code, granting the debtor an opportunity for a fresh start, and the interest of creditors in stemming abuse of consumer credit." *In re Green*, 934 F.2d 568, 571 (4th Cir. 1991). This stands in contrast to the "specific intent to limit the bankruptcy court's discretion [that] underlies the means test and

accounts for Congress's adoption of a 'mechanical formula' for presuming abuse of Chapter 7." *Morse v. Rudler (In re Rudler)*, 576 F.3d 37, 50 (1st Cir. 2009).

That leads to a second problem. Reliance on section 707(a) places the burden on the objecting party to show cause for dismissal. The 2005 amendments through the means test's presumption places a heavy burden on a debtor with excess disposable income "to produce highly specific evidence to rebut" and in that respect "provides a path for dismissal that is meaningfully different from § 707(a)." *Piazza v. Nueterra Healthcare Physical Therapy, LLC, (In re Piazza)*, 719 F.3d 1253, 1266 (11th Cir. 2013). The 2005 amendments to section 707(b) "were intended 'to correct perceived abuses of the bankruptcy system,' not to limit bankruptcy courts' ability to correct such abuses in non-consumer cases or plac[e] additional weapons in the hands of abusive debtors." *Id.* at 1270 (*citing Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010)). *See also Pollitzer,* 860 F.3d at 1339 ("BAPCPA was specifically directed at what Congress viewed as the bankruptcy courts' continued reluctance to dismiss petitions filed by debtors with repayment ability.").

Nor is the over-inclusive nature of the means test exclusive to converted cases or unanticipated. By choosing to base disposable income on a past six-month period, it was inevitable that the test would not always predict future income accurately. For example, a nonrepeating bonus or payment received during the six-month pre-petition period could "greatly inflat[e a debtor's] gross income" for purposes of the means test. The Supreme Court, for example, held in *Hamilton v. Lanning* that even though a one-time buyout from the debtor's former employer increased her "current

monthly income," a court could consider the nonrepeating nature of the income in chapter 13, because the chapter 13 section at issue used the term "projected." 560 U.S. at 524 (citing 11 U.S.C. § 1325(b)). Additionally, because many of the permitted expense deductions in section 707(b)(2) reference Internal Revenue Service standards, they will not always represent actual expenses. *See, e.g., Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 76 (2011) ("Although the expense amounts in the Standards apply only if the debtor incurs the relevant expense, the debtor's out-of-pocket cost may well not control the amount of the deduction."). Congress "accepted that the newly adopted standardized means test might, at times, lead to anomalous results." *Brooks v. Clark*, 784 F.3d 380, 385 (7th Cir. 2015). But, in "eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces." *Id.* (quoting *Ransom*, 562 U.S. at 78).

These effects may be magnified in some converted cases, but not all. Some debtors' income may remain steady between the pre-petition period and the date of conversion. Others may choose to convert their cases soon after the petition date. On the other hand, a test based on a six-month pre-petition period makes the provision harder to game. Manipulating income will require the debtor to do so over a sustained period rather than strategically filing a petition under chapter 7 during a short gap in employment. In other sections the Bankruptcy Code uses a similar approach to avoid gamesmanship, such as by basing eligibility to claim a state's exemption laws on the debtor's domicile for the 730 days preceding the petition in order to discourage

strategic moves on the eve of bankruptcy for bankruptcy planning purposes. 11 U.S.C. § 522(b)(3)(A).

As these examples demonstrate, the majority approach is more clearly consistent with the policies which both the 1984 and 2005 amendments were intended to address.

## CONCLUSION

For the reasons set forth herein, the Debtor's request to deny the United States trustee's two motions to dismiss his case will be denied. The parties remain at issue, and the UST may proceed and be heard on his motions to dismiss the Debtor's case. The court will continue the motions until October 14, 2020 for a case management conference.

DATE: September 30, 2020

ENTER:

_____
Thomas M. Lynch
United States Bankruptcy Judge